AGOODASH ACHIM OF ITHACA, N. Y., INC., Plaintiff, *v.* TEMPLE BETH-EL, INC., and Another, Defendants.

Supreme Court, Tompkins County, March 22, 1933.

*Saul Kauffman* [*William H. Harding* of counsel], for the plaintiff.

*Newman & Newman,* for the defendants.

SENN, Official Referee. Formerly there were two incorporated Jewish religious societies at Ithaca, N. Y., viz., the Agoodash Achim and the Chevro Kadisho. Each society was what is known as orthodox, but were separate and independent of each other, separately conducting orthodox Jewish religious services in rented quarters. Apparently neither organization was strong enough to build or maintain a synagogue or suitable temple of worship.

In the year 1924, through the influence of the late Daniel Roths-

child and other members of both congregations, a movement was inaugurated having in view a consolidation of the two societies. There were meetings of committees, and finally a joint meeting of the two congregations. At this meeting a majority of those present and a majority of each society voted in favor of the proposed consolidation, but several members of Agoodash Achim were opposed, and voted in the negative. The number of negative votes is in dispute, plaintiff claiming that there were six or seven, and it is conceded that there was at least one. It was understood at the time, and I believe so recorded in the minutes of the meeting, that all the property and paraphernalia of each society would be turned over to the consolidated corporation.

The evident purpose of the proposed merger was the formation of a new and stronger congregation, and especially the building and ownership of a structure for religious worship that would serve the requirements of the Jewish population and comport with the dignity of a municipality of the importance of the city of Ithaca.

Soon after the passage of the resolution to consolidate, the defendant Temple Beth-El was incorporated as a religious corporation, and began holding religious services in rented rooms, which were attended by some of the members of both Agoodash Achim and Chevro Kadisho. The construction of the proposed new temple was promoted under the auspices of the new corporation, aided by members of the two older societies and others, and the structure was completed and dedicated in the year 1929. There appears to be no question that the temple is owned and controlled by the corporation Temple Beth-El, through its properly constituted officers.

The controversy out of which this action arose has its origin in the fact that among those who profess the Jewish faith there are two schools of religious thought and practice; the orthodox, and the modern or reformed. The orthodox Jew insists on a rigid adherence to the ancient forms and tenets of worship, such as covering the head while in prayer, women not allowed to approach the altar to read the scroll, etc., and holds it to be a sin not to observe such rules.

The so-called modern or reformed Jew does not disapprove those ancient customs, but holds that their observance is a matter of decorum and propriety, and that their reasonable relaxation is not a sin.

The ancient Sanhedrin has long since ceased to exist, and there is to-day no superior body of Jewish ecclesiastical authority to which such questions can be referred for decision, so that resort must be had to the Bible and Jewish writings and authorities. With the wealth of Jewish history, literature and tradition, it is not strange

that, in this age of freedom of thought, learned rabbis should differ in their views and interpretations.

With the merits of these differences, the court can have no concern; but the fact that they do exist may have a bearing on the equities. It is claimed on the part of the plaintiff that when it was voted to consolidate with Chevro Kadisho, it was represented that only orthodox services would be held by the merged corporation, and that some of its members voted in favor of the merger in reliance upon that promise who would have otherwise voted in the negative. However that may be, the Temple Beth-El was incorporated independently, and in its articles of incorporation did not purport to be a merged corporation. After the temple was finished, provision was made for orthodox worship in one part of the building and for reformed or modern services in the other. It is held by many orthodox Jews, but contradicted by others, that true orthodoxy does not permit the two forms of worship in the same temple. Due to this and other differences, the congregation of Agoodash Achim never ceased to function as a religious corporation, and still so functions, although in greatly reduced numbers and with lessened regularity.

No proceedings were ever taken by any one under the provisions of the Religious Corporations Law (§ 13) or the Membership Corporations Law (§ 7),* for the merger or consolidation of the plaintiff with Chevro Kadisho, nor was there any attempted compliance with such law. No petition in that behalf was ever presented to the Supreme Court or any judge thereof, or to any court or judge, and no order for such consolidation was ever made or purported to be made. In short, the two corporations were never merged or consolidated.

It may have been believed by some that there was a consolidation. Neither corporation had a lawyer in its membership, and none was consulted. Chevro Kadisho ceased to function and turned its property and effects over to the new corporation. Plaintiff turned over its effects, except that it retained a small sum of money, and never parted with its title to the cemetery plot in question. The majority of the members of plaintiff and Chevro Kadisho became members of Temple Beth-El, which of itself does not indicate a belief that there was a merger, because many were doubtless drawn by the greater attractions of the new temple. Before this there were some who, like Mr. Blowstein, were members of both congregations.

At the time of the proposed merger the plaintiff owned the burial plot described in the complaint. It held a deed to it from the Lake-

---

* Now sections 50, 51.

view Cemetery Company, Inc., and had paid for it with its own funds. The deed had not then been recorded.

There is some evidence to the effect that, when the proposed merger was discussed and voted, it was promised and understood that all the property of the two corporations, including the cemetery plot, was to be transferred to the consolidated corporation; that it was suggested by some that the deed not having been recorded, it would save recording one deed to have a new deed direct from the cemetery company to Temple Beth-El; that in furtherance of the agreement, Abraham Spolansky, president of Agoodash Achim, handed to Mr. Rothschild, secretary and treasurer of Temple Beth-El, the unrecorded deed held by plaintiff, and offered to sign any papers necessary to effectuate the transfer; that the transaction was never completed on account of the decease of Mr. Rothschild and the death of Charles P. Coffey, the lawyer in whose hands the matter had been placed; and that thereafter Joseph Coleman, a member of plaintiff, took the deed and had it recorded on August 12, 1924, doing this on his own initiative and without authority. It does not definitely appear how Mr. Coleman obtained possession of the deed.

At the time of the trial there had been four burials in the plot. The first was while the plot was held by this plaintiff before the proposed merger. The next two were after that, but before the controversy arose. The last was by consent after the dispute arose.

On February 13, 1930, there was recorded in the Tompkins county clerk's office a deed dated February 10, 1930, from the Lakeview Cemetery Company, Inc., to the Temple Beth-El, which assumed to convey the burial plot in question. This is claimed to have been done in furtherance of the understanding above referred to.

Since a time soon after the alleged consolidation, the defendant Temple Beth-El, Inc., has assumed and exercised possession and control of the burial plot. It claims to have done so with the knowledge and acquiescence of those who now compose the plaintiff, and cites among other things the fact that it received the proceeds of the sale of one of the burial lots while Mr. Spolansky, now president of the plaintiff, and who verified the complaint herein, was vice-president of Temple Beth-El.

Plaintiff brings this action to recover possession of the burial plot in question. Defendant has answered as a defense and also by way of counterclaim, alleging, in substance, that by reason of the premises the congregation of the plaintiff did in fact merge with Chevro Kadisho, forming and becoming the answering defendant, the Temple Beth-El, Inc. That from the fall of 1924 on, the plaintiff was

and now is an inactive and *de facto* dissolved non-functioning membership corporation, and that the ownership of the premises described in the complaint was intended to be and is in equity and in fact in the said Temple Beth-El, Inc. It demands a dismissal of the complaint and a decree of this court either certifying that the title to the said property is vested in the defendant, or commanding the proper officers of the plaintiff to execute and deliver to the Temple Beth-El, Inc., a deed of said property in specific performance of the agreement made between the plaintiff and Chevro Kadisho and the organizers of Temple Beth-El, Inc., for the benefit of the latter.

It is asserted that the agreement to convey the burial cemetery plot was based on mutual promises and other good and valid considerations as between Agoodash Achim and Chevro Kadisho, fully performed on the part of the latter, and accepted, acted upon and on its part performed by Temple Beth-El, in good faith, and to such an extent that it would be inequitable and an injustice to permit plaintiff to now repudiate its agreement; that plaintiff, its officers and members, by reason of their acts and acquiescence, are estopped from now claiming title to the property in dispute; that if the agreement to convey is by reason of any statute otherwise invalid, it has been validated by part performance.

The doctrine invoked is familiar and supported by many authorities, such as *Brown* v. *Crabb* (156 N. Y. 447), cited by defendant's attorneys. It is based on the principle that equity will regard as done that which ought to be done (156 N. Y. 450), and is most commonly applied in cases where the Statute of Frauds would otherwise apply. However, there are other cases.

If in making a contract or in a course of dealing the title of one party or the other to the property involved in the transaction is recognized, and the dealing proceeds upon that basis, both parties are ordinarily estopped to deny that title or to assert anything in derogation of it. (21 C. J. 1238, § 244.)

However, to work an estoppel of this character, it has been held to be necessary that the recognition of title or right be clear and unambiguous. There can be no estoppel by mere inference. It is also essential that the party against whom the estoppel is claimed did not act in ignorance of his rights, and that he misled the party claiming the estoppel, who changed his position in reliance upon his acts. (Id. 1239.)

Estoppel is defined to be " a bar or impediment raised by the law, which precludes a man from alleging or denying a certain fact or state of facts, in consequence of his previous allegation or denial or conduct or admission." (Black Law Dict. [2d ed.] tit. Estoppel.)

The whole doctrine of estoppel by conduct or *in pais* rests on the assumption that the one to be estopped was capable of contracting or of binding himself by his admissions or other conduct; in other words, a party of legal capacity to contract or waive.

It becomes necessary then to inquire whether Agoodash Achim, the plaintiff, is such a party, because, after all, defendant's right to maintain its counterclaim rests upon the consolidation agreement. If that proceeding was an utter nullity for the purposes intended, it seems to me it is similar to dealing with a party without legal capacity to contract, and no estoppel can be based thereon.

There was no authority at common law for such an arrangement. Corporations had certain powers, but not such as would authorize the consolidation of two corporations into one. Legislative authority is necessary to accomplish such a result. (*Davis* v. *Congregation Beth Tephila Israel*, 40 App. Div. 424.)

The last above was a case where two religious corporations had agreed (through committees) to consolidate into one. The agreement was in writing and signed by the parties. One corporation was to transfer to the other all its property, and the latter was to accept all the members of the former with all the rights and privileges of the latter. The agreement was, in effect, to consolidate the assets and members of the two corporations — to combine them under a slightly different name. As in the case at bar, there was no attempt to comply with the statute, then substantially the same as now, and in an action by one of the members to have the agreement set aside and to require the two corporations to account for and restore to each other all the property held thereunder, the court held that the agreement was *ultra vires*, and that a single dissenting member of either corporation could maintain an action to set it aside. It was argued that the congregation of which the plaintiff in that action was a member acquired all the property of the other, and hence that he was in no way prejudiced. The court stated that this was no answer to the plaintiff's complaint. He had a right to keep the corporation of which he was a member within its chartered powers, and the *ultra vires* act could not be defended on the pretense that it was advantageous. (Id.)

Even though there was no dissent, the members could not accomplish, even by a unanimous vote, that which the corporation itself, through its trustees, could not lawfully carry out. (*Chevra Bnai Israel und Motal* v. *Chevra Bikur Cholim*, 24 Misc. 189.) (See, also, *Congregation Anshe Yosher* v. *First United Royatiner Sokolower Verein*, 32 id. 269, a case in many respects similar to the one at bar, where the court said that the agreement to consolidate

being *ultra vires* and void, it was not effective to transfer any of the property which the plaintiff then held to the consolidated society.)

From the above authorities it can clearly be seen that even if Abraham Spolansky had carried out his alleged agreement to execute a deed to Temple Beth-El, it would not have been effective to transfer the title, because it would have been without warrant of law.

If the statutory proceedings for consolidation had been followed, the property in question would have vested in the new or consolidated corporation without further act or deed. (Religious Corp. Law, § 12; Membership Corp. Law, § 7*.)

Further, I think there is merit in plaintiff's contention that the scruples which professed orthodox Jews have or claim to have against being buried in the same cemetery with others should be respected. Every individual has an inherent right to his own beliefs and prejudices. The fact that there is a growing tendency among Jews to get away from ancient customs and tenets cannot affect the rights of those who choose to adhere to them. The burial lot in question is the property of Agoodash Achim, and I see no moral, legal or equitable reason why it should be deprived of the same.

The counterclaim must be dismissed, and the relief demanded in the complaint is granted. Submit findings accordingly.